CASE 79—ACTION BY JOHN F. MURPHY AGAINST THE B. & O. S. W.
R. R. COMPANY TO RECOVER DAMAGES FOR PERSONAL INJURY.—
FEB. 3.

# Murphy v. Baltimore & Ohio S.-W. R. R. Co.

APPEAL FROM JEFFERSON CIRCUIT COURT.

JUDGMENT FOR DEFENDANT AND PLAINTIFF APPEALS.  REVERSED.

RAILROADS—INJURY TO SERVANT—DEFECTIVE COUPLING—CONTRIBU-
TORY NEGLIGENCE—PEREMPTORY INSTRUCTIONS.

Held: 1. Plaintiff, a brakeman, was directed to couple certain
cars equipped with a Buckeye automatic coupler, which, when
in good condition, is operated by the brakeman, standing out-
side the track, by a lever running across the end of the car.
The coupler in question was broken, to the knowledge of the
railroad company's servants, but its condition was not ascer-
tained by plaintiff until he attempted to use it, when it was
necessary to raise the pin by hand.   The train was about
twenty-five feet away, backing down the grade; and, after discov-
ering the condition of the coupler, plaintiff placed one foot
inside the rail, raised the iron pin, in which position his arm
was caught and crushed.   Behind the car which was coupled
were other cars, which were being loaded with live stock, on
which persons were working; and, if the coupling had not been
made, such persons and stock might have been injured, and
plaintiff testified that it was partly to prevent this that he at-
tempted to make the coupling.  HELD, that plaintiff was not
guilty of contributory negligence, as matter of law, sufficient
to preclude his recovery.

Murphy v. Baltimore & O. S. W. R. R. Co.

GEORGE WEISSINGER SMITH, ATTORNEY FOR APPELLANT.
O'NEAL & O'NEAL, OF COUNSEL.

### CLASSIFICATION OF QUESTIONS OF LAW.

1. Even if a brakeman discovers danger, where the whole transaction is the occurrence of a moment, he is not to be held responsible if he errs as to the estimate of danger that confronts him. Defective Coupler; Goodrich v. N. Y. Cent. R. R., 22 N. F., p. 397. Climbing ladder. No lantern: Fox v. Chicago, St. P. R. R., 17 L. R. A., 289.

2. The case at bar is analogous to that where, in the discharge of a public duty, a person knowing danger, faces it to protect another and is injured by the negligence of some third person, who created the danger. Am. & Eng. Ency. of Law, 2d ed., vol. 7, p. 396.

GIBSON, MARSHALL & GIBSON, FOR APPELLEE.

### POINTS RELIED UPON AND AUTHORITIES.

1. When an experienced brakeman is ordered to make a coupling of two cars, one stationary and the other subject entirely to his control, having two methods of performing the act of coupling them, one a proper and perfectly safe way, the other an improper and exceedingly dangerous way, he is required by law to accept the safe method; and if he voluntarily chooses the improper and dangerous method, knowing it to be improper and dangerous, he is guilty of such contributory negligence as will preclude him from recovering damages from his employer for injuries sustained by reason of such contributory negligence.

2. The fact that a brakeman freely and voluntarily selects an unsafe and improper manner of performing his duty in preference to a proper and perfectly safe manner, in the absence of some urgent reason or necessity for choosing the unsafe way, can not be held to be such an emergency as will excuse him from exercising that degree of care for his own safety which ordinary persons usually exercise for their safety. Morris v. Duluth, &c., Ry. Co., 108 Fed., 747; Gleason v. Detroit, &c., Ry. Co., 73 Fed., 647; Penna. R. R. Co. v. O'Shaughnessy, 41 Am. & Eng. R. R. Cas., 479; Memphis, &c., R. R. Co. v. Graham, 53 Am. & Eng. R. R. Cas., 396; Ferguson v. Iowa, &c., R. R Co., 5 Am. & Eng. R. R. Cas., 614; McCain v. Chicago, &c., R. R. Co., 76 Fed., 125; Gowen v. Harley, 56 Fed., 973; Kansas, &c., Co. v. Reid, 85 Fed., 914; Brown's Admx v. L. H. & St. L. Ry. Co., 23 Ky., Law Rep., 1504.

Opinion of the court by Judge Settle—Reversing.

The appellant, John F. Murphy, while in the service of the appellee, Baltimore & Ohio Southwestern Railroad, as a brakeman upon one of its freight trains, in attempting to make a coupling had his arm caught between two cars, wounding and mangling it to such an extent as to require amputation between the elbow and shoulder. The petition alleges, in substance, that his injuries were caused by the negligence of the appellee in providing a defective engine for pulling its train of cars, and in failing to provide a good and sufficient coupler for one of the two cars which he was attempting to couple; that is, that the coupler on one of the cars was defective, and the chain belonging thereto broken, which defect made it dangerous for use. It is further averred in the petition that the defective condition of the coupler was known to appellee, but unknown to appellant, at the time of the injury. The answer denies the negligence complained of in the petition, and pleads contributory negligence on the part of appellant, which is denied by the reply. Upon the conclusion of appellant's evidence, the jury, under a peremptory instruction from the special judge, found for appellee; and, appellant's motion and grounds for a new trial having been overruled, he prosecutes this appeal.

No effort was made in the trial court to show that the engine was defective, but appellant sought a recovery upon the sole ground that the coupler was defective and dangerous. The coupler complained of was what is known as a "Buckeye Automatic Coupler," which, when in good condition, is operated by a rod running across the end of the car, at right angles to the track. On the end of the rod a lever or crank is attached. A brakeman standing outside of the track may pull the lever, and thereby move the rod,

which in turn draws a chain attached to an iron pin, which is raised by the use of the lever, and when so raised the only remaining duty is to open the knuckles on a plane with the earth's surface. If the coupler is in order, all this may be done in a moment, and the stationary car is thus made ready to automatically grasp the approaching car. It is manifest, therefore, that when the Buckeye coupler is in good order there can be little or no danger to the brakeman in making the coupling. Although the answer denies that the coupler was in a defective condition, in the brief of counsel for appellee it seems to be admitted that it was in fact defective, in 'that the chain attached to the pin was broken, and besides it is overwhelmingly shown by the evidence introduced in the court below that such was its condition. The proof also conduces to show that when in this defective condition the only practical way to make the coupler do its work is to insert the arm between the bumpers, take hold of the pin with the thumb and fingers, and lift it up, and at the same time pull the knuckles out with the hand; and it is further shown that, while attempting to operate the coupler in this way, appellant's arm was caught between the irons of the two cars when they came in contact. It is, we think, also conclusively shown by the evidence that the defective condition of the coupler was known, or by the use of ordinary care could have been known, to appellee's agents and servants whose duty it was to give attention to such things, some time before appellant's injuries were received. Upon the other hand, the evidence also shows that its condition was not known to the appellant until in the act of making the coupling. The coupling was done at Flora, Ill., under the following circumstances: At that point the conductor desired to take in its train some loaded cars standing on the side track. These cars were

stationed behind a flat car loaded with lumber.  By order
of the conductor, appellant opened the switch and signaled
the engineer to back the engine, to which was attached one
freight car.  The engine and car slowly backed down the
grade, while appellant ran ahead, and he reached the lum-
ber car when the backing train was about 25 feet away.
He kept outside of the rails, and, when he reached the lum-
ber car, pulled the lever out.  As the chain was broken, the
effort failed, of course, to draw the pin.  This was the first
warning that he received of the broken condition of the
coupler.  By this time the backing train had gotten in about
12 or 14 feet of him.  It appears that about 20 feet behind
the lumber car were two cars wholly or partly loaded with
live stock, with one or more persons on them or at them,
loading the stock.  This fact was known to appellant, who
doubtless also knew that if he failed to make the coupling
the lumber car would probably be driven down grade against
the cars upon which were the men and stock, by the collision
with the backing train.  Upon discovering the condition of
the coupler, appellant placed one foot inside the rail, reach-
ed over the dead irons, and with his hand opened the knuck-
les and raised the iron pin, and in this position his arm was
caught by the colliding cars and crushed as stated.

The lower court, in granting the peremptory instruction,
seems to have proceeded upon the idea, not that appellant
was guilty of negligence in the manner of operating the de-
fective coupler, but that his injury resulted from his neg-
ligence in failing to get out of the way of the approaching
train after he discovered that the coupler would not work
by the action of the lever; and this conclusion seems to have
been reached because of an answer made by appellant to a
question upon cross-examination, to the effect that he might
have stepped back after the discovery of the defect in the

coupler before the cars met. We do not agree with this conclusion of the trial court, for, in our opinion, the question of whether the appellant was or not negligent should not be made to depend altogether upon whether it would have been possible for him to have escaped by stepping back from between the cars after he discovered the defect in the coupler, but whether, in the emergency presented, confronted as he was with the necessity for immediate action, and knowing of the danger to himself from attempting to make the coupling, and of the danger of injury to the men and stock in the cars a few feet beyond him from his failing to do so, he acted with ordinary care in the performance of his duty. On this point appellant testified as follows: "The whole thing didn't consume but a few seconds, the engine and cars were moving down on me, and I was trying to get the coupling open, because I was on the down-hill side, and I knew the gentlemen below were loading the stock on the two stock cars to go with us; and a man braking as long as I had been (9 or 10 years) didn't want to miss a coupling. Q. What would have been the consequence of doing nothing? A. I was trying to do that because if I missed the coupling the cars would roll on down onto the stock cars, and cripple some one. A person has to look out for that. Q. Was that part of your duty? A. Yes, sir." It must be borne in mind in this connection that the entire transaction consumed, as appellant stated, "but a few seconds." At the time he went in to adjust the coupler, the backing car had gotten within 10 or 12 feet of him. The cars were moving very slowly—not faster than two miles an hour. It can not be said that, in reaching over the irons with his hand to open the knuckles or to release the iron pin, appellant was guilty of negligence, for, according to the evidence this was the only way to open the

coupler in its defective condition; and, besides, he doubtless
believed that the coupler could be thus prepared for per-
forming its office in time for him to avoid the backing train,
if it continued the same slow movement until it got to the
car to which it was to be coupled. But according to the
evidence, when the backing train was only four or six
feet off it gave a sudden lurch, as if something had let
loose, thus attaining an increase of motion, which in all
probability could not reasonably have been anticipated by
appellant at the time he took hold of the coupler; and, but
for this increased movement of the train, it may, without
violence to the evidence, be assumed that he could have
adjusted the defective coupler, and stepped back from be-
tween the cars before they came in contact, and thereby
have escaped injury. So we think that in view of such
an emergency as that in which the evidence shows appellant
was required to act, with little time for thought or reflec-
tion, and having in view, as he doubtless did, the danger
that threatened the men and stock in the cars beyond him,
and the danger to himself as well, the lower court erred
in assuming that appellant was negligent in failing to step
back from between the cars. The jury, under proper in-
structions from the court, should have been allowed to de-
termine from the evidence whether he was or not guilty of
negligence in attempting the coupling, and, if so, whether
such negligence contributed to his injuries to such an extent
that but for same they would not have been received. We
find in Goodrich v. Railroad Co. (N. Y.), 22 N. E., 397, 5 L.
R. A., 750, 15 Am. St. Rep., 410, a case not altogether un-
like the one at bar. Goodrich, who was a brakeman, in at-
tempting to couple some cars got his hand crushed. The
train was slowly backing at the time, and when the cars to
be coupled were in a few feet of each other, he stepped be-

tween them for the purpose of inserting the link in the
bumper or drawhead of the stationary car.   When the cars
were three or four feet apart he discovered that the bumper
of the moving car was lower than the bumper of the sta-
tionary car.   He testified that he thought that, by raising
the link, it would enter the bumper of the stationary car,
but found that it would not do so, and his hand was caught
in the effort to raise the link.   In discussing the cause of
the accident, the court of appeals of New York said:   "The
defective bumper was thus shown to have been the prox-
imate cause of the accident.   It was literally the *causa
causans*.   Its immediate effect was to permit the dead-
woods of the two cars to come together, and the plaintiff
was from that cause exposed to a danger not within the
ordinary risks of his employment.   This result was trace-
able directly to the defendant's failure to provide the mov-
ing car with bumpers in good order, and, unless the proof
showed (which it did not) that plaintiff himself was in
some way responsible for the condition of the car, the neg-
ligence of the defendant was established.   The question as
to the plaintiff's contributory negligence was, I think, one
of fact for the jury.   .   .   .   He appears to have thought
that the coupling could be made with the straight link that
was in the drawhead.   He had the right to assume that
fact, and that the coupling appliances were in good order.
It was only at the moment that the cars were about to col-
lide that he discovered his error.   The court can not affirm
that for such an error of judgment, induced, as it was,
to some extent, by defendant's neglect, he is to be held to
have been careless   Under such circumstances, when the
whole transaction is the occurrence of a moment, a man
is not to be held responsible if he errs as to the estimate of
danger that confronts him.   If he acts the part of a prudent

man, willing to and intending to perform the duty to which he has been assigned, he has done all that the law demands of him, and whether he acted such a part under the circumstances of this case was for the jury to determine." The supreme court of Iowa, in Fox v. Railroad Co., 53 N. W., 259, 17 L. R. A., 289, in discussing the question of whether a brakeman was guilty of contributory negligence in attempting to climb a car to set a brake when the train was in motion, in doing which he fell and his foot was crushed, said: "It is contended that the plaintiff can not recover, on account of the dangerous speed of the train, because he testified that he knew of its speed before he caught hold of the ladder. But he was required to mount the car. It is true, he might have refused to have done so, because it was running too fast, or because his lantern was out, or because when he approached the car he discovered that the ground sloped away from the track, so that he could not readily seize the ladder and place his foot on the stirrup. But he was acting under orders, and in an emergency which gave no time for reflection, and the jury might well find, as they did, that he was not chargeable with contributory negligence." We find nothing in the foregoing authorities that conflicts with any rule of law announced by this court in respect to cases of this character, and an examination of the authorities cited by counsel for appellee will, we think, show that none of them discusses the law in regard to the sudden discovery of dangerous defects, or the duty of a brakeman, in an emergency such as confronted appellant, to protect property or the lives of others thereby imperiled. With reference to the danger that might and doubtless would have resulted to the stock and stockmen near appellant in the event he failed to effect the coupling of the cars, we find the rule thus stated in 7 Am. & Eng. Ency. Law (2d

Ed.), sections 2, 3, p. 396; "He whose duty it is to care for the safety of others may do so, even though his duty leads him into great and visible danger, and not be chargeable with contributory negligence. But the injured person must not have created the danger, or been guilty of negligence from the consequence of which he tried to save others, or his recovery will be barred; and it must appear that he was in the discharge of duty, and could by the exercise of ordinary care have performed his whole duty, and yet escaped the danger." The rule stated is manifestly sound in principle and consonant with reason, and by it the conduct of appellant on the occasion of receiving his injuries should be measured.

We find no error in the rulings of the lower court in excluding certain questions and answers in the depositions excepted to.

For the reasons herein indicated, the judgment of the lower court is reversed, and the case remanded, with directions to set aside the verdict and judgment and grant appellant a new trial.

Petition for rehearing by appellee overruled.