## Franklin's Administrator v. Louisville & Nashville Railroad Company.

### (Decided October 30, 1913).

### Appeal from Hopkins Circuit Court.

1. Railroads—Duty of Company to Furnish to Shippers Safe Cars.— A railroad company is under a duty to exercise ordinary care to furnish cars in reasonably safe condition to shippers, and for a breach of this duty it becomes liable to any person injured thereby.

2.  Railroads—Duty to Furnish Reasonably Safe Cars to the Owner of the Plant Reached by a Spur Track—Liability for Failure.— Where the owner of a coal mine owned a spur track extending from his mine to the railroad company's line, and the railroad was in the habit of furnishing him on the spur track cars to be operated on the spur track and loaded by his employes, the railroad company was under a duty to furnish cars with sufficient brakes, and where an employe of the coal company was injured by a car with a defective brake, the railroad company was liable.

3.  Railroads—Defective Appliances—Injury to Third Persons.— Where the servant of a coal company was injured by reason of a car with a defective brake being put by a railroad company on a spur track for the use of the coal company, he might maintain an action against the railroad company.

4.  Railroads—Unsafe Appliances—Injury to Third Persons—Duty and Liability of Third Persons and Railroad.—Where a car is put on a spur track to be used by a coal company, it is the duty of the coal company to exercise ordinary care to discover any defects in the car that might interfere with its safe operation, and if it knew, or by the exercise of ordinary care could have known, of the defects complained of, the railroad company is not liable. On the other hand, if the coal company did not know and could not by the exercise of ordinary care have known of the defective condition of the brake, and the railroad company knew or by the exercise of ordinary care could have known of this defective condition, then the railroad company is liable.

5.  Railroads—Duty to Third Persons Using Its Cars.—A railroad company owes to persons having dealings with it, and whom it invites to use its cars, the duty to exercise ordinary care to have them in suitable condition for the use to which they are intended and to which it knows they will be applied.

GIBSON & KINCHELOE and GORDON, GORDON & COX for appellant.

C. J. WADDILL, FRED P. CALDWELL, C. H. MOORMAN and BENJAMIN D. WARFIELD for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

A. R. Franklin, an employe of the Rose Creek Coal Company, was killed while engaged at work on a partially loaded coal car at the coal tipple of the coal company by being thrown from the car. The accident was due to the fact that an empty car going at rapid speed down an incline track struck with force the car in which Franklin was at work.

In this action to recover damages for his death the petition charged that the mine of the Rose Creek Coal Company was situated on a spur track connected with

the line of the appellee railroad company. That the spur track was constructed and owned by the coal company. That when coal cars were needed by the coal company they were placed by the railroad company on this spur track and thence run to the mine or the place where they were needed by employees of the coal company. The cars rolling of their own momentum from the place where they were put by the railroad company down the incline spur track to the point where they were used by the coal company.

It was further averred in the petition "that one of said cars owned, operated and maintained by defendant, and so set in by the defendant upon said switch of said Rose Creek Coal Company to be loaded with coal on or about said date was at the time same was so set in upon said switch and for a long time theretofore had been negligently caused and permitted by defendant to be and remain in a dangerous, unsafe and defective condition, and the hand brake on said car was negligently and improperly rigged by defendant and was unsafe and dangerous and was and had been for several days theretofore, by the defendant caused and permitted to be and remain defective and out of order, and out of repair, so that the movements and speed of said car when being moved singly upon the track could not be controlled by means of said brake, all of which facts said defendant and its agents and servants knew or by the exercise of ordinary care could have known at the time said car was so supplied and furnished to said Rose Creek Coal Company, and the defendant was guilty of gross negligence in supplying and furnishing said car in said condition.

"Thereafter on said November 12th, 1909, the agents and servants and employes of the said Rose Creek Coal Company acting in a careful and prudent manner and in the ordinary discharge of their duties to their said employer, attempted to move said defective car with said improper and defective brakes down said incline track to said coal tipple of said company to be loaded with coal for shipment over said defendant's railroad for market, when by reason of the condition and character of said car and said brakes hereinabove set out, the movements thereof could not be controlled by said agents and servants of said Rose Creek Coal Company, and said car, without fault on their part, was caused by its own momentum to run rapidly down said incline track to said

coal tipple, where said car so in motion ran into and struck a partially loaded car of coal standing under said coal tipple, and the impact and concussion caused by said collision knocked or threw plaintiff's decedent, A. R. Franklin, who was then and there employed as a laborer by said Rose Creek Coal Company, off of said car and beneath the wheels thereof."

To this petition a general demurrer was sustained, and thereupon an amended petition was filed charging "that the defective and dangerous condition of said car and of the brakes thereof was not known to decedent or to the agents or servants of the Rose Creek Coal Company, who were engaged in moving said car or any agent or servant of the Rose Creek Coal Company, nor could said dangerous and defective condition of said car have been discovered by any employe of the Rose Creek Coal Company, or by the decedent, by a casual or ordinary inspection, nor could said dangerous and defective condition of said car and the brakes thereof have been discovered by decedent or any agent or servant of the Rose Creek Coal Company by exercise of ordinary care.

That the agents and servants of said Rose Creek Coal Company charged with the duty of moving said car, in the exercise of care, prudence and diligence, made every effort to check and stop the movements of said car; that said car was caused to start immediately upon being uncoupled from the remaining cars, by reason of the inherently and imminently dangerous condition and character of its brakes, and that by reason of the defective and inherently and imminently dangerous condition of said brakes and said cars, they were unable to check, control or stop the movements of said car, and that the movement of said car started by its own weight, and moving by its own momentum was the direct and proximate cause of the fatal injury to plaintiff's decedent."

A demurrer was also sustained to this pleading, and the plaintiff declining to plead further, his petition as amended was dismissed and he appeals.

In disposing of the case we must accept as true the averments of the petition as amended. Accepting them as true, did the pleading state a cause of action? We think it did. It is true the car having the defective brake was left on the spur track by the railroad company to be taken charge of by employes of the coal company and managed and operated by them from the place at which it was left to the place at which it was needed by

the coal company. It is also true that the spur track was owned and controlled by the coal company, and further that no employe or person connected with the railroad company had anything to do with the movement of the car causing the collision between the time it was left on the spur track and the time of the collision.

With these facts admitted, it is apparent that the liability of the railroad company, if any there be, consists in the fact that it placed the car without a brake or with a defective brake on the spur track when it knew, or by the exercise of ordinary care could have known, the defective condition of the brake, and with knowledge of the manner in which the car would be run from the place it was left to the place it was needed for use by the coal company.

In support of the ruling of the trial court, counsel for the railroad company rely chiefly on the case of Logan v. Cincinnati, New Orleans & Texas Pacific Ry. Co., 139 Ky., 202. In that case, as it appears from the opinion, the Kentucky Barytes Company had a spur track running from the line of the Louisville & Atlantic Railroad Company to its mill, and it was the custom of the railway company to deliver cars consigned to the Barytes Company on this spur track at a point near the line of the railway. When the material in the cars so left on the spur track was needed by the Barytes Company, its employes pushed them to the place where it was used. The brake upon a car loaded with barytes placed on this spur track was in such a defective condition as to render it useless in controlling the movements of the car, and this was known to the railway company when it was set on the spur track. The servants of the railroad company, realizing the defective condition of the brake, in order to prevent the car from running down the grade of the spur track, chocked the wheels of the cars with timbers and rocks, thereby leaving it immovable and in a safe condition. A few days after this the employes of the Barytes Company undertook to move this car from the place at which it had been left by the railway company to the mill of the Barytes Company. These employes, before moving the car, discovered the defective condition of the brake and by testing it found that it would be of no use in controlling the movements of the car. But notwithstanding this fact they concluded that by using a piece of timber to chock the wheels they could run it safely to the mill. Thereupon they removed the

chocks placed by the servants of the railway company and which held the car stationary and started it by pushing. When the car was thus started the employes of the Barytes Company could not control it, and it ran at a rapid speed down the incline spur track to the mill and there struck a car, causing it to move forward and inflict injuries on Logan, of which he complained in his suit. The trial court under these facts directed a verdict in favor of the railway company, and in affirming that judgment, after relating the foregoing facts, we said:

"The peremptory instruction was granted because the trial court was of opinion that the failure of the appellees to repair the brake of the car, or to equip it with a proper brake, was not the proximate cause of appellant's injuries, and in this conclusion we are constrained to concur. It may be conceded that appellees were negligent in delivering to the Kentucky Barytes Company the car with a defective brake, but they were not liable for the injuries received by the appellant, as an employe of the Kentucky Barytes Company, from that company's use of the car in its defective condition, unless their negligence was the proximate cause of such injuries; and in order to establish proximate cause it was necessary that casual connection between appellees' negligence and the injury should have been shown and that without such negligence the injury would not have been inflicted.

"Tested by the principles stated, we do not think the facts of this case warrant a finding that appellant's injury was the natural proximate consequence of appellees' failure to provide the car in question with a reasonably safe brake, or that it ought to have been foreseen by them in the light of the attending circumstances. The breach of duty upon which an action like this is brought must not only be the cause, but the proximate cause, of the injury complained of. If it cannot be said that the result would have inevitably occurred by reason of the appellees' negligence, it cannot be found that it did so occur, and appellant is not therefore, entitled to recover. * * * *

"The undisputed facts show that the car was left by appellees on the spur track of the Kentucky Barytes Company in an altogether safe condition, where it remained 24 hours and until turned loose by the servants of the Barytes Company, who permitted it to get beyond their control and injure appellant. In thus attempting to move the car the servants of the Barytes Company

were guilty of negligence and such negligence was the efficient cause of appellant's injuries. In other words, it was not on account of the defective brake that appellant received his injuries, but because of the manner in which the car was attempted to be moved by Wm. Davis and his assistant.''

We think it apparent from these extracts taken from the Logan case that it is not susceptible of the construction attempted to be given it by counsel for the railroad company. The facts upon which the decision in the Logan case was based and the facts stated in the petition in this case as amended, to which a demurrer was sustained, are so very different on vital and controlling points that the Logan case could not well be relied on as ruling this case.

In the Logan case the decision was put distinctly upon the ground that the act of the railway company in putting a car with defective brakes on the spur track was not the proximate cause of the injury complained of. It was put distinctly upon the ground that the efficient cause of the injury was the act of the employes of the Barytes Company in negligently attempting to move the car with full knowledge of the fact that the brake was useless.

Turning now for a moment to the facts of this case, we find it distinctly averred that the railroad company knew that the brake on the car in question was defective and useless when it put the car on the spur track. We find it distinctly averred that the employes of the coal company did not know and by the exercise of ordinary care could not have known of the defective and useless condition of this brake, and started the car in motion believing that the brake would hold it. Assuming this to be true, the employes of the coal company were free from any negligence contributing to the death of Franklin. The car had been put on the track by the railroad company for the purpose of being moved to the coal mine by employes of the coal mine in the manner in which they moved it when this accident occurred. When the railroad company left this car on the spur track it knew the method by which it would be moved, and must have known that without a brake its movements could not be controlled on the descending grade to the coal mine.

Assuming all this, the question remains, did the act of the railroad company in placing this car with a defective and useless brake, to be used in the manner stated,

create a liability on its part to an employe of the coal mine who might be injured or killed because the movement of the car could not be controlled? Or, to put it in another way, did the railroad company owe any duty to the employes of the coal mine? If it did owe them the duty to exercise ordinary care to have its cars in such condition as that they might be operated with reasonable safety by competent persons, then, under the circumstances stated in the petition it committed a breach of that duty for which it should be required to respond in damages. If it did not owe to the employes of the coal mine any duty to exercise ordinary care to keep its cars in reasonably safe condition for their protection, no liability attaches to it for the death of Franklin. Its liability only arises in the event it owed it a duty and failed to perform it. Let us now see what duty, if any, it owed.

We had occasion in the case of L. & N. R. R. Co. v. Freppon, 134 Ky., 650, to consider the duty and obligation of a railroad company under facts somewhat similar to the facts of this case. In the Freppon case an employe of the Henderson Tobacco Extract Company was injured in attempting to open a defective and unsafe door of a car owned and used by the railroad company which had been placed by the railroad company on a switch owned by it that ran from the main line to the factory at which the car was to be unloaded. In that case the railroad company insisted that it owed no duty to Freppon and was not responsible to him in damages because he was not injured while in its employment or while performing any service for it, and as there was no contractual relation existing between Freppon and it, there was no obligation on its part to furnish him safe appliances or a safe place in which to work for the Extract Company. In disposing of this contention, we said:

"Is a common carrier under a duty to maintain its cars in a reasonably safe condition when they have been placed by it in the course of its business at a point for the purpose of being loaded or unloaded, and, therefore, liable to respond in damages for a failure to perform this duty to a person not an employe of the railroad company, but who is engaged in loading or unloading the car as the servant of the person for whose use the car has been so placed? Or is the common carrier when it places the car at the disposal of the consignee or consignor for the purpose of being unloaded or loaded relieved from all obligation to have the car at the time it

is so placed in a reasonably safe condition for the pur-
pose for which it is to be used, and free from liability
for injuries received by the consignee or consignor or
their servants while loading or unloading the car? If
the railroad company owed no duty to Freppon under
the circumstances stated, it is plain that the verdict in
his behalf should be set aside and the action dismissed.
But we do not agree with counsel for the railroad com-
pany that a common carrier is relieved from the obliga-
tion of keeping its cars reasonably safe during the time
they are being loaded or unloaded merely because dur-
ing such time they are under the control of the persons
loading or unloading them, at least in so far as it may
be necessary to perform this service. When a carrier
delivers a car to a consignor to be loaded, or to a con-
signee to be unloaded, it must have the car in a reason-
ably safe condition for the purpose for which it is in-
tended to be used. In the absence of an express agree-
ment, the law will raise an implied contract to this ef-
fect, and, under and by virtue of this implied contract,
a recovery for a breach of it may be had by any person
injured while engaged in loading or unloading the car
and exercising ordinary care for his own safety. * * *

"The duties and obligations of a common carrier to
the public are not suspended during the time that its cars
are being used by its patrons for purposes of loading or
unloading. When it delivers a car for this purpose and
invites its customers to use it, it undertakes that the car
is in a reasonably safe condition to be used for the pur-
pose intended. * * *

"Its obligation to keep its station platforms and
approaches in a reasonably safe condition for use by
persons lawfully enjoying them by its invitation is no
greater than its duty to keep a car in a reasonbaly safe
condition that it furnishes to a shipper and invites him
to use it. In each instance the person using the premises
or appliances furnished to him by the carrier for the
purpose of enabling him to transact business with it has
a right to assume that the premises and appliances so
furnished will be reasonably safe for his use. It would
be a distinction without a difference to hold that a car-
rier must keep its depot platform reasonably safe for
use by persons getting on and off its trains, and yet that
it might deliver to a shipper for the purpose of being
loaded or unloaded a car that was in an unsafe and
dangerous condition. When the railroad company

placed the car on the switch for the purpose of being unloaded by the employes of the extract company, these employes while so engaged were neither trespassers nor licensees. They were at least impliedly invited by the railroad company to engage in unloading the car it had placed there for that purpose to be unloaded by them.''

Adopting as sound the views thus expressed in the Freppon case, we think they are decisive of this case. The grounds upon which the liability of the railroad company rest in this case come well within the rule of liability laid down in the Freppon case. It is, however, suggested that in the Freppon case the court, after using the language quoted, indulged in some remarks with reference to the cases of Risque v. Chesapeake & Ohio Ry. Co. and Roddy v. Missouri Pacific Ry. Co., cited in the opinion, tending to leave the impression that the railroad company was only held responsible to Freppon because the car by which he was injured was on its track and in effect in its custody at the time.

As to this it may be said that in determining the liability of a railroad company for furnishing to a shipper or consignee a defective car, we do not think it material whether the car, as in the Freppon case, is left to be loaded or unloaded on a switch of the railroad company or turned over to the consignor as in this case to be loaded or unloaded on a switch or track owned by him, and if there are in the Freppon case any expressions tending to convey an idea different from this, they are expressly withdrawn and disapproved. It is true there was no contract relation between the railroad company and the employes of the coal company. There was no relation of master and servant but the duty of the railroad company to exercise ordinary care to furnish a reasonably safe car for use by the coal company and its employes does not depend on the existence of any contract relation or grow out of the existence of the relation of master and servant. It rests upon the duty that a common carrier owes to persons having dealings with it and whom it invites to use its cars, to exercise ordinary care to have them in suitable condition for the use intended and to which it knows they will be applied. Louisville R. Co. v. Burch, 155 Ky., 245.

The railroad company knew when it put this car on the spur track that it would be started in motion by hand and moved by its own momentum on a descending grade.

It must have known that its use in this way was made exceptionally dangerous by the absence of a sufficient brake, as it knew that the only way by which the speed of the car could be controlled was by the brake. No one knows better than railroad employes the danger of a brakeless car, and a railroad company is under a duty not to turn over for use so dangerous an agent without exercising ordinary care to have it in reasonably safe condition for the use to which it knows it will be put.

This is merely the extension and adaptation to modern conditions of the old and familiar principle that a person who, for his own advantage or benefit, invites another to use his premises or appliances must take care to see that they are in reasonably safe condition for the use to which it is intended they shall be applied.

To sum up the matter, it was the duty of the coal company to exercise ordinary care to discover any defects in the car in question that might interfere with its safe operation, and if it knew, or by the exercise of ordinary care could have known, of the defective condition of the brakes, the railroad company is not liable. On the other hand, if the coal company did not know, and could not by the exercise of ordinary care have known of the defective condition of the brake, and the railroad company knew, or by the exercise of ordinary care could have known of this defective condition, then the railroad company is liable.

Wherefore, the judgment is reversed, with directions for a new trial in conformity with this opinion.