## Louisville & Nashville Railroad Company v. Franklin's Administrator.

(Decided June 18, 1915.)

### Appeal from Hopkins Circuit Court.

1.  Railroads—Defective Cars Causing Injury of Employee of Shipper To Whom Furnished.—In an action by an employee of a coal company, against a railway company, to recover damages for injuries resulting from a defective brake on a car furnished by the railway company to the coal company, the primary fact to be established by the plaintiff is that the coal company exercised ordinary care to discover the defect and was unable to do so.

2.  Negligence—Contributory Negligence.—Contributory negligence will not ordinarily be imputed to a servant who is injured while making a reasonable effort to preserve his master's property where the emergency is not caused by his own negligence; but where the danger of the attempt is so great as to produce at the first blush an abiding conviction of the utter heedlessness of the act, the fact that the act is one committed in an attempt to preserve property will not operate to relieve from the otherwise unescapable imputation of contributory neglect.

BENJAMIN D. WARFIELD and LAFFOON & WADDILL for appellant.

GORDON, GORDON & COX, GIBSON & KINCHELOE and VIRGIL Y. MOORE for appellee.

OPINION OF THE COURT BY JUDGE HANNAH—Reversing.

The Rose Creek Coal Company operates a mine in Hopkins County, near Nebo, which is served by the Louisville & Nashville Railroad Company. A spur leaves the main line of the railway at Nebo and runs back about a mile to the mines of the coal company. A single track operated by the railroad company passes under the tipple of the coal company and terminates about three hundred yards above it. The grade of this track rises as it passes under the tipple and approaches the end of the track. Empty cars intended to be loaded with coal are placed by the railway company at the upper end of this track. The coal company has three side-tracks which leave the railway track above the tipple, and pass under the tipple parallel with the railway track, again connecting with it below the tipple. When an empty car is desired at the tipple, the switch is opened connecting the railway track with that particular track of the coal

company upon which it is desired that the car shall be loaded, and the car is "dropped down" to the tipple by an employe of the coal company, controlling its movement by the use of the hand-brakes with which the cars are equipped.

On November 12, 1909, Jesse Gill, an employe of the coal company, went to the head of the railway track for the purpose of dropping down an empty car to the tipple. In doing so, he was unable to check or control its speed by the use of the hand-brake, and the car crashed into a loaded car standing under the tipple, causing the death of A. B. Franklin, an employe of the coal company. Gill's inability to control the car was due to a defective brake, which defect was unknown to him.

This action was thereupon instituted in the Hopkins Circuit Court by Franklin's administrator against the railroad company, to recover damages for the negligent killing of his intestate.

A demurrer to the petition as amended was sustained by the court below, which ruling was reversed by this court. See Franklin's Administrator v. L. & N. R. R. Co., 155 Ky., 594, 160 S. W., 162.

Upon the remand of the action, a trial resulted in a verdict and judgment in plaintiff's favor in the sum of five thousand dollars; and the defendant appeals.

It is the contention of the appellant upon this appeal that the trial court erred in denying its motion for a directed verdict. It argues that this motion should have been granted (1) because the former opinion made it the primary duty of the coal company to exercise ordinary care to inspect the car and held that appellant was not liable if such an inspection would have disclosed the defect in the brake, which duty, appellant contends, the coal company failed to perform; and (2) because decedent was guilty of contributory negligence in leaving a place of safety and placing himself in a position of peril, after he had knowledge of the danger.

In the former opinion, the law of the case is stated in these words: "To sum up the matter, it was the duty of the coal company to exercise ordinary care to discover any defects in the car in question that might interfere with its safe operation; and if it knew, or by the exercise of ordinary care could have known, of the defective condition of the brakes, the railroad company is not liable. On the other hand, if the coal company did

not know, and could not by the exercise of ordinary care, have known of the defective condition of the brake, and the railroad company knew, or by the exercise of ordinary care could have known of this defective condition, then the railroad company is liable.''

1. It will thus be seen that the primary fact to be established by the plaintiff as the basis of recovery against the defendant railroad company was that the coal company exercised ordinary care to discover the defective brake, and was unable thereby to discover it.

Upon this proposition, Jesse Gill testified that there were on the occasion mentioned three empty cars at the head of the railway track above the tipple; the first of which, according to his usual custom, was chocked; that, is, blocks of wood were thrust under the wheels to prevent movement of the car; that he transferred one chock to the car just above, uncoupled the first car from the second one, knocked out the other chock, and it then commenced to move down the track of its own momentum.

He also testified that before starting the car he examined the brake rod; that the brake was set up; that the brake shoes were against the wheels; that the brake rod was straight, and the shoes apparently good. As a matter of fact, there was missing from the apparatus a pin or bolt which connected the several parts thereof, and lacking which the winding of the brake-chain upon the brake-shaft would not cause the pressure of the brake-shoes against the wheels. This pin or bolt was located underneath the car approximately over the axle of the first two wheels. Gill did not go over the entire brake apparatus, which consists of some half dozen parts connected together by pins or bolts under the body of the car; nor did he wind up the chain on the brake-staff and test the efficiency of the apparatus in that manner.

It is appellant's contention that if such an inspection as Gill made constitutes the exercise of ordinary care upon the part of the coal company (whose non-delegable duty he was performing in making such inspection), then appellant itself could not have discovered the defect by the exercise of ordinary care; and that under the rule established by the former opinion as the law of the case, there can be no liability.

But this contention rests upon the false assumption that that which constitutes the exercise of ordinary care

upon the part of one person will likewise constitute the exercise of ordinary care upon the part of any other person, even though the circumstances under which the act in question is or is required to be performed be not identical.

We cannot say that such identity of circumstances exists, or that the circumstances under which the coal company acted or was required to act in making its inspection of the car were the same as those under which the railway company acted or was required to act.

When appellant placed this car upon the track above the tipple, it had notice of the manner in which the car would be handled, and of the necessity for the safety of the brakes. It was appellant's own car, temporarily entrusted to the control of one not engaged in the railway business, and to be temporarily handled by servants in such independent occupation. It is a well-known fact that railway companies maintain a system of car inspection greatly superior to any that would be at the command of a shipper, and that they have employes who are especially fitted for and who are expected to perform the work of discovering defects in cars and repairing them when such defects are found. On the other hand, when the coal company came to make its inspection of this car, the owner of the car had delivered into its custody a car which had been operated by and under the control of the railway servants and which had presumably been recently inspected. The coal company was not engaged in the railway business, and had no special system of inspection, nor had it any occasion therefor. It had no men whose sole duty it was to make such inspection; was not under ordinary circumstances expected to repair cars, nor to be prepared to do so, when defects were discovered.

In the light of these facts, it cannot be contended that the same conditions obtain in respect of the mental attitude of the servants making inspection on behalf of the coal company and those making such inspection on behalf of the railway company; or that identity of method in such inspections is essential to constitute an equal measure of care under the law. And it was therefore perfectly competent for the jury to find that while the coal company was not negligent in making its inspection, the railway company failed to exercise ordinary care therein.

2. But it is further contended that Franklin was guilty of contributory negligence as a matter of law.

Gill, a witness for plaintiff, testified that when he found he was unable to check or to control the movement of the car because of the defective brake he shouted to Franklin and got his attention, and that Franklin walked across the track on which the moving car was approaching the tipple, looking up the track at it; that before he walked across this track, he was standing between it and the next track to it looking at the runaway car. At the time Franklin crossed the track, the approaching car was about 150 yards from the tipple. Gill jumped off of the car when it reached a point about 75 feet from the tipple, and did not see Franklin after the latter crossed the track.

Walter Noel, another of plaintiff's witnesses, and who was the tipple boss under whom decedent was working, testified that he was standing between the two loading tracks on the upper side of the tipple, and that just before the empty car struck the loaded car, Franklin had been standing right by his side; but that where he went or what became of him, witness could not say, his attention at that time being diverted to warning a man up on the loaded car to get off of it and out of the way; and that he did not see Franklin any more until they took him out from under the wheels of the loaded car; that when he saw the runaway car approaching he shouted to everybody to get out of the way, and that Franklin was at that time the nearest man to him, so close he could have touched him; and that Franklin was looking at the approaching car. This was at the upper side of the tipple; that is, at the end of the loaded car which the runaway car struck when it reached the tipple. He further testified that Franklin was killed by the front wheels of the other end of the loaded car.

Ralph Gill, another witness for plaintiff, testified that when the collision occurred, Franklin was up on the power end of the loaded car, holding on with one hand and twisting the brake with the other, when the runaway car struck the loaded car and threw him under the wheels.

In the light of this evidence, there is no escape from the conclusion that Franklin knew of the approach of the runaway car, and that with this knowledge, he voluntarily and after express warning by his foreman, left

a place of safety and climbed up on the loaded car which was about to be struck by the runaway car. That he realized the peril of his position on that car is evidenced by the fact that he was holding on with one hand and twisting the brake with the other. Just what his purpose was, of course, must remain only a matter of surmise, as there is no evidence explaining his purpose.

It is suggested by appellee that he was engaged in an effort to minimize injury to his master's property. The cars were not the property of his master; but had they been, we still would be indulging in mere conjecture in assuming that such was his purpose. But, contending that such a purpose on his part may be fairly inferred from the circumstances, appellee claims the benefit of cases holding that contributory negligence will not be imputed as matter of law to a servant injured while making a reasonable attempt to preserve his master's property, where the emergency is not caused by his own negligence. Murphy v. B. & O. S. W., 71 S. W., 886, 114 Ky., 696, 24 R., 1500; L. & N. v. Seibert's Admr., 55 S. W., 892, 21 R., 1603.

However, it seems to us that under the facts herein shown, the danger of the attempt to preserve the property, if that was the purpose of decedent, was so great as to produce at the first blush an abiding conviction of the utter heedlessness of his act and absolute disregard of the consequences thereof, and that it was not such a reasonable effort to save property or minimize injury thereto as would operate to relieve from the otherwise conclusive imputation of contributory neglect.

With full knowledge and appreciation of the impending collision, he left a place of safety and put himself in a position, the exceedingly perilous nature of which he must have understood; and having chosen so to do, his death was the result of his own want of care.

The trial court should have granted the motion of the defendant for a directed verdict. The judgment is reversed.