## Runk v. Chicago, St. Louis & New Orleans Railroad Company et al.

(Decided December 21, 1928.)

C. J. WADDILL for appellant.

GORDON & GORDON & MOORE, TRABUE, DOOLAN, HELM & HELM, and R. V. FLETCHER for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

Boddie & Powell was a corporation engaged in the business of operating a coal mine in Hopkins county. Appellant and plaintiff below, O. M. Runk, was one of its servants and employees. The company maintained a tipple, from which it dumped the product of its mine into cars standing on a side track that it owned and constructed for its use and benefit. The side track ran from and parallel with a spur track that was constructed by the appellee and defendant below, Illinois Central Railroad Company, which was the lessee of the other defendant and appellee below, Chicago, St. Louis & New Orleans Railroad Company. Both the spur and the side tracks ran north and south on a down grade of about 1¼ per cent. from south to north. Some empty coal cars were placed by the lessee defendant at or near to the south end of the switch, and they were made stationary, and could be moved by the coal operating company to its tipple by their own momentum in going down grade.

On September 25, 1926, the plaintiff, Mr. Boddie, and one Pennington attempted to move one of the empty cars in the manner indicated from the place that the lessee defendant had stationed it. They first uncoupled it from the other two, and removed the scotch that had been placed by defendant in front of its front wheels, and then all three of them got in the car, and plaintiff released the

brakes. The car did not move, and Pennington procured a pinchbar, by the aid of which he started the car slightly rolling down grade at a speed described by the witnesses of "about as fast as a man could walk." When the car neared the tipple, where the intention was to stop it, the brake was applied by plaintiff, and it was discovered that, because of some defect, it would not work, and the car continued to roll. After it passed under the tipple, plaintiff climbed down from its front end on to the ground on the west side of the track upon which it was rolling, and ran ahead while the car was still moving, and attempted to cross the track in front of it in going to the switch on the east side at the north end for the purpose of throwing it so as to let the car go out on the spur track with which the side track connected at that end, with the purpose of preventing possible injury to the track and also probable derailment of the car. In attempting to cross the track, he stumbled and fell, and did not extricate himself from the situation in time to prevent the car running over both his feet, and they were so injured thereby as to necessitate the amputation of both his legs below the knee.

He filed this action against the two defendants to recover damages from them upon the ground, as alleged, that they were guilty of negligence in furnishing the car with a defective brake, which they knew, or could have known by the exercise of ordinary care, was defective, and with the intention and purpose that the car would be operated, moved, and used in the manner attempted to be done. It was further alleged, as negligence on the part of defendants, that plaintiff hung one of his feet in the frog of the switch which, if it had been properly constructed and maintained, would not have occurred. The latter ground was abandoned at the trial, for the all-sufficient reason that it was wholly disproved, the plaintiff himself admitting that his foot did not hang in the frog, and he gave no cause for his stumbling. The answer upon which the case was finally tried consisted of a denial and a plea of contributory negligence, the latter of which was denied by reply, and, upon trial before a jury, the court, at the conclusion of plaintiff's testimony, sustained defendants' motion for a peremptory instruction, followed by a verdict as so directed and a judgment dismissing the petition, to reverse which plaintiff prosecutes this appeal.

At least two cases have been before this court involving practically the identical facts, and upon which we adjudged and applied the principles of law arising therefrom, and they are L. & N. Railroad Co. v. Franklin's Adm'r, 165 Ky. 595, 177 S. W. 457, and L. & N. R. Co. v. Weldon, 165 Ky. 654, 177 S. W. 459. The first one was brought to recover judgment for the death of Franklin, which occurred and was brought about under parallel facts to those involved here, and in the second one plaintiff, an injured servant of the coal company who was not killed, was injured in the same way under similar facts, and in each of them we held that a peremptory instruction was proper, because of the undisputed contributory negligence of the respective injured servants of the coal companies.

It will be noted that in each of those cases, and also in this one, the injured servant of the coal company sustained no employment relationship whatever to the sued railway company. On the contrary, they were strangers to it, and, because thereof, none of the principles governing the rights, duties, and obligations of the parties where the relationship of master and servant exists applied. It was recognized, however, in those two cases, as well as on the first appeal of the Franklin case (Franklin's Adm'r v. L. & N. R. Co., 155 Ky. 594, 160 S. W. 162), that the railway company that so furnished and set the cars for the contemplated handling by and use of the coal company was under a duty to it and to its servants to exercise ordinary care in equipping the cars with brakes and in maintaining them so that they could be safely handled in the manner that all persons contemplated, and of which the railway company had knowledge. Our reading of those cases and of this record convinces us that, if there is any material difference between their facts and those appearing in this record, it is in favor of defendants, since in this case plaintiff knew that the car that injured him was not only moving, but he was also aware of its speed, and that those on it could not stop it, since he had already tested the brake and found it nonavailable for that purpose, and with such knowledge he attempted to cross the track in front of it. Moreover, he alighted from the car while so in motion on the side of the track opposite the switch that it was his purpose to manipulate, instead of getting off of it on the side of the track upon which the switch was located.

In the Weldon case, plaintiff alighted from the moving car under the same conditions to remove a pinchbar on one of the rails of the track in front of it, in the doing of which he was compelled to place his body in a position that the moving car would collide with it if he did not remove himself therefrom in time to prevent it. In the Franklin case decedent voluntarily got upon a loaded coal car standing under the tipple, presumably for the purpose of setting the brake on it so that it would remain stationary when the moving empty car collided with it. The jar of the collision threw him from the loaded car, resulting in the injuries that produced his death. In each of those cases the act intended to be performed by the injured servants necessarily placed them in a position to be injured by the moving car if they remained there; but in this case plaintiff could have accomplished his purpose by not placing himself in such danger if he had alighted from the moving car on the same side where the switch was located, in which case the collision would have been avoided by the car passing him when it overtook him.

But learned counsel for plaintiff attempts to differentiate this case from the Franklin and Weldon cases, because of the fact that Boddie, the president and general manager of the coal company, and who was in the car, directed plaintiff to throw the switch, and that in attempting to obey that direction plaintiff placed himself in peril. Such direction on the part of Boddie might be material if this was an action against the coal company instead of one against the railroad company, since in that case plaintiff, as the servant of the former, might obey such directions, unless the hazard in doing so was so great as a person of ordinary prudence would not undertake it. But, clearly, the fact that a superior officer of a wholly disconnected and independent company gives directions to a servant of that company will not have the effect to create a liability of a third party so as to support a cause of action against him which without such directions would not exist. Surely, it could not be insisted that the giving of directions to a servant by a superior, in such a case, could have any greater effect in creating liability of such stranger third party for injuries to the servant in carrying out such direction than it would have upon defendants' liability to the superior officer if he himself had undertaken the task that he directed the servants to perform and had sustained injuries produced from the same

cause. The directed act in no way appertained to the business of defendants. If, however, for the purposes of this case, we should recognize the alleged distinguishing fact as one material to the liability of the defendants, it then could not operate in favor of plaintiff under the facts of this case, because the direction from the superior officer did not include the means, manner, or method by which it was to be performed by plaintiff as such servant. It was only a general direction that could be performed by adopting either a safe or an unsafe method, and to which methods we have hereinbefore referred. Plaintiff, on his own volition, chose the unsafe one, and for that reason his right of action against defendants was not perfected because of the direction given by his superior officer, even if it would otherwise have done so, but which we do not so hold.

But the record discloses an additional and third fact that would prevent the direction of plaintiff's superior officer from aiding his right of recovery against the defendants, even if it should be conceded that such direction could, in any event, have that effect. That fact is, that plaintiff had already alighted from the moving car, and was on his way to throw the switch before any such direction was given. He therefore had undertaken the hazardous task (if such it was), the performance of which resulted in his injuries, and with a settled purpose to perform it, before the superior officer issued any direction, and the latter was not the reason or cause for undertaking to perform it.

The question of remote and proximate cause is argued in briefs, as well as the right of plaintiff to act in emergency, both of which were as much involved under the same facts in the two cases referred to (if at all), and neither of them was discussed or given any effect in those opinions. On the contrary, they were bottomed exclusively on the contributory negligence of the injured servants.

For the reasons hereinbefore stated, we can see no legal distinction between those cases and this one, and for the reasons therein given the judgment is affirmed.